JOHN M. CHASTAIN, plaintiff in error, *vs.* CHRISTIAN J. STALEY, defendant in error.

[1.] C. as a trustee, sold land, representing the title to be good, and undertaking to warrant the title. By mistake or fraud, in him, and mistake in the purchaser, the warranty given was a void one.

*Held*, That the purchaser was entitled to relief.

[2.] The land sold, was a *body* consisting of three tracts lying in a row. The title to one of these tracts, failed; that tract lay between the other two, of which it was as large as one, and twice as large as the other; it was the best improved of all:

*Held*, That a rescission was relief which the purchaser might demand.

In Equity from Lee. Decision by Judge ALLEN, March Term, 1857.

The facts are sufficiently stated in the opinion of the Court.

WARREN & HUMPHRIES, for plaintiff in error.

WEST, *contra*.

*By the Court.*—BENNING, J. delivering the opinion.

Christian J. Staley, filed a bill in Equity, in the Superior Court of Lee county, against John M. Chastain.

This bill was to the effect, that in 185—, John M. Chastain, as the surviving trustee of James Chastain, in pursuance of an order or decree of the Superior Court of Houston

county, exposed to sale, at public out-cry, before the Court-House door in Webster, an entire body of land, containing 506¼ acres, more or less, consisting of lots, numbers 21, 22, and the North half of lot number 20, in the 13th district of Lee: The title to which entire body of land, John M. Chastain represented, on the day of sale, to be good. That this body of land was knocked off to Staley, at the price of $3,160; that afterwards, on the 15th of January, Staley, in compliance with the terms of the sale, made his promissory note to become due on the 1st of January, 1856, to Chastain, trustee of Chastain, or bearer, for said sum of $3,160, with H. J. Sistrunk and Jno. H. Hora, as security.

That, afterwards, on the 22d of February,. next after the making of the note, John M. Chastain, trustee as aforesaid, in pursuance of the sale, and in compliance with his representations, made to Staley a deed of conveyance to said body of land, by which he, "trustee as aforesaid, warranted" the land to Staley; the warranty being in these words: "And the said John M. Chastain, trustee as aforesaid, the said bargained premises, unto the said Christian J. Staley, his heirs, and assigns, will warrant, and forever defend, against himself, and against all other persons whatsoever."

That Staley relying on the statements of Chastain, that he had a good title to the whole of the land, and afterwards, on the warranty, expected that he was purchasing, and had obtained a good title to the land; that the representation was an inducement to him to purchase the land, without which, he would not have purchased it. That, as he was informed, and as he believes, Chastain, trustee as aforesaid, had not at the time of the sale, or has had at any time since, a good title to one of said lots, viz: lot No. 21; that one Jasper Johnson of the county of Gilmer, has the title to that lot; and that Jasper Johnson is threatening to sue Staley for the lot.

That this lot is the most valuable and best improved portion of the body of land, and is situated between lots, 20 and 22; that it imparts additional value to the other portions of

the body of lands, so that, without it, those portions being separated from each other, would be comparatively of but little value to Staley; and that he would not have purchased these separate tracts.

That Chastain has sued him and his surety, on the note. That he has no defence to the suit, at law.

That he has been, and is now, willing, and proposes in his bill, to pay Chastain a fair rent for the land, for the time he has had the same in his possession, and to convey the same back to Chastain, by deed without warranty, upon the delivery to him of the note aforesaid, or upon the cancelling of the note and the deed.

That Chastain may answer the bill; that the note and deed may be declared void, and that "said trade be fully cancelled;" that the suit may be enjoined; and, to that end, that the writ of injunction to Chastain may issue, enjoining the suit; and that Staley may have such other and further relief as to the Judge may seem meet.

To this effect was the bill.

The bill was sanctioned, and the injunction it prayed for issued.

Afterwards, Chastain, the defendant, filed both a demurrer to the bill, and an answer to the bill.

He then moved to dissolve the injunction, on the ground, that the answer had sworn off the Equity of the bill.

This motion, and the demurrer, the Court took up together. After the close of the argument on them, made by the counsel for Chastain, the counsel for Staley asked leave to withdraw the bill, for the purpose of amending it in two particulars, viz: adding Jasper Johnson, as a defendant, to the bill, and adding a statement to the bill, that Staley, when he took the deed, supposed that Chastain gave such a warranty as would be binding on him, if the title to the land failed.

This leave the Court granted; and granted, without prejudice to the injunction.

To the granting of this leave, Chastain's counsel excepted;

insisting, that even with the amendments made, the bill would still be without equity.

The Court refused to decide the demurrer or the motion to dissolve the injunction; but "decided to retain said bill, and also to retain said injunction, till said amendments, and then consider of the questions made by said motions."

To this action of the Court Chastain also excepted.

After the order for leave to withdraw the bill for the purpose of its being amended, and to withdraw it without prejudice to the injunction, had been made, the counsel for Chastain, asked leave to proceed with the common law suit. Leave was refused, and to the refusal Chastain excepted.

The exceptions were argued by Mr. Stubbs for Chastain, and by Mr. West, for Staley.

The first exception is to the order of the Court, granting leave to Staley to amend his bill, and in support of that exception, it is said, that the bill did not contain any equity, and that it would not be helped to any by the proposed amendments, if made.

Is this true?

As the bill stands, it appears, that the deed was made " in pursuance of the sale, and in compliance, also, with the representations made" by Chastain.

A warranty was a part of the deed.

The deed, then, to be in pursuance of the sale, and of Chastain's representations, had to be a deed containing a warranty.

It was the understanding of both parties, then, that there was to be a warranty,—of course a valid warranty. .

As the bill would stand, if amended in the way proposed, it would also appear that Staley took the deed, believing the warranty to be binding on Chastain. Indeed, we should perhaps have to infer this, from his taking the warranty.

Now, the warranty was void as against Chastain—void as against Chastain, the individual, by the Act of 1854—void as against Chastain, the trustee by the old law, Acts 1854, 1856.   11. Ga R. 1.   8. Ga. R. 236.

So far, then, as Staley is concerned, we may say that it was by *mistake* that he accepted the warranty ; we may say, that he accepted it, because he *mistook* it for a good one.

And so far as Chastain is concerned, we must say this, that he knew the warranty to be void, or he did not; if he knew it to be void, his giving it was a *fraud ;* if he did not know it to be void, his giving it was a *mistake.*

The result is, that we must say, that this void warranty was given and accepted under a mistake in both parties, or under a fraud in one, and that one the giver, and a mistake in the other.

Either way, the accepter of the warranty, is entitled to relief. *Wyche & wife vs. Green,* 11. *Ga. R.* 161. *Story Eq.* §. 134.

To what relief was he entitled?

The tracts of land lay in a row. The one to which the defect as to the title, applied, was the middle one. That too was the best improved one, and it made two-fifths of the whole body of the land. It must be obvious, that the loss of this lot would greatly impair the value of the other two lots, under any but most extraordinary circumstances. It is certain, that the land left would no longer be a body, but would be two bodies, with another body, as big as the one, and twice as big as the other, standing an insurmountable obsta cle between the two.

These things being so, nothing but a *rescission* would be relief. To a rescission, therefore, is Staley entitled. *Coffee and others vs. Newson* 2. *Kelly* 439.

We think, then, that the bill as it would stand when amended, if not before, would be a bill *not* without Equity; and therefore, we think, that the objection made by Chastain, to the order granting leave to Staley to amend his bill, was not good.

The second exception is such, that it fails of necessity with the failure of the first.

The order of leave to withdraw the bill to amend it was

made expressly without prejudice to the injunction. There- fore, the Injunction remained for all purposes, although it might be that the bill was withdrawn for one purpose, the purpose of amendment. If the injunction remained, it pre- vented Chastain from proceeding with his common law suit; so thought the Court below; so think we.

The result is, that we affirm the decision complained of.

. Judgment affirmed.